AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the
District of Arizona

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 22 - 5146mJ |
| Samsung Cellular Phone in Black Case IMEI 35598084709034 | ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____Arizona_____
*(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated by reference

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated by reference

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before    4 27 /22
*(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.        ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
on duty in the District of Arizona                        .
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____.

Date and time issued: April 13, 2022 @ 2:24 pm        *Judge's signature*

City and state:   Phoenix Arizona                    Deborah M. Fine, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### *Property to be searched*

This search warrant applies to information and items associated with and stored or maintained in or on the **Subject Cellular Telephone 1**, described as a Samsung Cellular Phone in Black Case, IMEI 35598084709034. **Subject Cellular Telephone 1** is currently in the custody of the Federal Bureau of Investigation (FBI) and located at the FBI Phoenix Field Office, 21711 North 7th Street, Phoenix, Arizona.

This warrant authorizes the forensic examination of the Subject Cellular Telephone for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

The United States intends to search for, and to seize, any items that constitute fruits, evidence and instrumentalities of violations of 18 U.S.C. § 2113 (Bank Robbery and Incidental Crimes). These violations relate to the activities of Andres MURRIETTA and his associates, as described in the Affidavit. The items to be searched for and to be seized include information, data, files, and other content from the Subject Cellular Telephone described in Attachments A-1 and A-2 pertaining to the following matters:

a. The engagement and involvement of Andres MURRIETTA and his associates in bank robbery.

b. Communications, messages, emails, conversations, photos, videos, notes, documents, files or other content indicating, identifying, or depicting the clothing, tools, methods, or instruments used to facilitate bank robberies as depicted in bank surveillance images and/or described by witnesses.

c. Communications, messages, emails, conversations, photos, videos, locations, maps, routes, schedules, calendars, notes, or other information related to the planning, preparation, and/or execution of bank robberies.

d. Documents, photos, images, video, communications, emails, messages, or other items bearing the name of, identifying, or referring to the victim businesses.

e. Documents, photos, images, video, communications, emails, messages, records, information, or other items indicating the occupancy, rental, use or ownership of any vehicles used in or to facilitate the commission of the crime.

g.  Photos, videos, statements, conversations, messages, or other digital content depicting Andres MURRIETTA or his associates, with the tools or instrumentalities used in the commission of the robberies.

h.  Documents, receipts, records, search results, communications, photos, videos, communications, or other content related to the purchase and/or use of tools or other items used to facilitate the criminal activity.

i.  Notes, documents, messages, images, videos, or communications identifying or containing the names or contact information of associates of Andres MURRIETTA.

j.  Notes, documents, records, messages, images, videos, communications or other items identifying the ideology, motivation, preparation, and planning related to bank robbery and incidental crimes or any other robberies.

k.  GPS location and/or positioning information indicating or identifying the location history of the Subject Cellular Telephone and/or its user.

l.  Calendars, diaries, notes, or other documents used to record schedules, meetings, conversations, or other events related to the planning, preparation, and/or execution of robberies.

m. Diaries, journals, ledgers, photographs, maps, or other personal records indicating the locations or activities of conspirators leading up to the robberies and other planning activities.

n.  Maps, routes, location data, pictures, photographs, videos of or related to the offense locations or the locations of the planning, preparation, and/or execution of robberies, or travel related to the criminal activity.

p.  Photographs, videos, messages and images showing Andres MURRIETTA, criminal associates, U.S. currency, tools or instruments used in the criminal activity, real and personal property, or controlled substances.

q.  Indicia or ownership, occupancy, rental, or use of vehicles.

r.   Account information, settings, and saved usage information for all installed applications, or "apps," on the device.  Indicia of account ownership or usage.

s.   Any and all information/records that would tend to show that the crime of bank robbery or incidental crimes, other robberies, has been committed and/or information or records that would assist in identifying any other individuals associated with these crimes.

t.   Evidence indicating the Subject Cellular Telephone user's state of mind as it relates to the crime under investigation.

u.   Records of or information about Internet Protocol addresses used by the cellular telephone;

v.   Records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

w.   Contextual information necessary to understand the evidence described in this attachment

y.   Any information recording schedule or travel;

z.   Evidence of who used, owned, or controlled the cellular telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and phonebooks;

aa. Evidence indicating how and when the cellular telephone was accessed or used to determine the chronological context of the cellular telephone access, use, and events relating to crime under investigation and to the cellular telephone user

bb. Records relating to the receipt, transportation, deposit, transfer, or distribution of money, including but not limited to, direct deposit confirmations,

wire transfers, money orders, cashier's checks, check stubs, PayPal or other electronic money transfer services, check or money order purchase receipts, account statements, and any other records reflecting the receipt, deposit, or transfer of money

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
District of Arizona

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No. 22 - 5146 MB |
| *or identify the person by name and address)* | ) | |
| Samsung Cellular Phone in Black Case | ) | |
| IMEI 35598084709034 | ) | |
| | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated by reference.

located in the _____ District of _____ Arizona _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. 2113(a) | Bank Robbery |

The application is based on these facts:
See attached Affidavit, incorporated by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____*Brett Day*_____
Reviewed by Brett A. Day, AUSA

_____
*Applicant's signature*

Jacey E. Curry, Special Agent, FBI
*Printed name and title*

Sworn to and signed electronically.

Date: April 13, 2022 @ 2:24 pm

_____
*Judge's signature*

City and state:  Phoenix, Arizona

Deborah M. Fine, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### *Property to be searched*

This search warrant applies to information and items associated with and stored or maintained in or on the **Subject Cellular Telephone 1**, described as a Samsung Cellular Phone in Black Case, IMEI 35598084709034. **Subject Cellular Telephone 1** is currently in the custody of the Federal Bureau of Investigation (FBI) and located at the FBI Phoenix Field Office, 21711 North 7th Street, Phoenix, Arizona.

This warrant authorizes the forensic examination of the Subject Cellular Telephone for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

The United States intends to search for, and to seize, any items that constitute fruits, evidence and instrumentalities of violations of 18 U.S.C. § 2113 (Bank Robbery and Incidental Crimes). These violations relate to the activities of Andres MURRIETTA and his associates, as described in the Affidavit. The items to be searched for and to be seized include information, data, files, and other content from the Subject Cellular Telephone described in Attachments A-1 and A-2 pertaining to the following matters:

a. The engagement and involvement of Andres MURRIETTA and his associates in bank robbery.

b. Communications, messages, emails, conversations, photos, videos, notes, documents, files or other content indicating, identifying, or depicting the clothing, tools, methods, or instruments used to facilitate bank robberies as depicted in bank surveillance images and/or described by witnesses.

c. Communications, messages, emails, conversations, photos, videos, locations, maps, routes, schedules, calendars, notes, or other information related to the planning, preparation, and/or execution of bank robberies.

d. Documents, photos, images, video, communications, emails, messages, or other items bearing the name of, identifying, or referring to the victim businesses.

e. Documents, photos, images, video, communications, emails, messages, records, information, or other items indicating the occupancy, rental, use or ownership of any vehicles used in or to facilitate the commission of the crime.

g.  Photos, videos, statements, conversations, messages, or other digital content depicting Andres MURRIETTA or his associates, with the tools or instrumentalities used in the commission of the robberies.

h.  Documents, receipts, records, search results, communications, photos, videos, communications, or other content related to the purchase and/or use of tools or other items used to facilitate the criminal activity.

i.  Notes, documents, messages, images, videos, or communications identifying or containing the names or contact information of associates of Andres MURRIETTA.

j.  Notes, documents, records, messages, images, videos, communications or other items identifying the ideology, motivation, preparation, and planning related to bank robbery and incidental crimes or any other robberies.

k.  GPS location and/or positioning information indicating or identifying the location history of the Subject Cellular Telephone and/or its user.

l.  Calendars, diaries, notes, or other documents used to record schedules, meetings, conversations, or other events related to the planning, preparation, and/or execution of robberies.

m. Diaries, journals, ledgers, photographs, maps, or other personal records indicating the locations or activities of conspirators leading up to the robberies and other planning activities.

n.  Maps, routes, location data, pictures, photographs, videos of or related to the offense locations or the locations of the planning, preparation, and/or execution of robberies, or travel related to the criminal activity.

p.  Photographs, videos, messages and images showing Andres MURRIETTA, criminal associates, U.S. currency, tools or instruments used in the criminal activity, real and personal property, or controlled substances.

q.  Indicia or ownership, occupancy, rental, or use of vehicles.

r.   Account information, settings, and saved usage information for all installed applications, or "apps," on the device.  Indicia of account ownership or usage.

s.   Any and all information/records that would tend to show that the crime of bank robbery or incidental crimes, other robberies, has been committed and/or information or records that would assist in identifying any other individuals associated with these crimes.

t.   Evidence indicating the Subject Cellular Telephone user's state of mind as it relates to the crime under investigation.

u.   Records of or information about Internet Protocol addresses used by the cellular telephone;

v.   Records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

w.  Contextual information necessary to understand the evidence described in this attachment

y.   Any information recording schedule or travel;

z.   Evidence of who used, owned, or controlled the cellular telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and phonebooks;

aa. Evidence indicating how and when the cellular telephone was accessed or used to determine the chronological context of the cellular telephone access, use, and events relating to crime under investigation and to the cellular telephone user

bb. Records relating to the receipt, transportation, deposit, transfer, or distribution of money, including but not limited to, direct deposit confirmations,

wire transfers, money orders, cashier's checks, check stubs, PayPal or other electronic money transfer services, check or money order purchase receipts, account statements, and any other records reflecting the receipt, deposit, or transfer of money

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Jacey Curry, being first duly sworn, hereby depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1.       Your Affiant makes this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for search to examine the cellular telephones further described in Attachment A (hereafter, **"Subject Cellular Telephone 1"**) and (hereafter **"Subject Cellular Telephone 2"**), in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2.       Based on the facts set forth in this Affidavit, my training and experience, and in consultation with other experienced investigators, there is probable cause to believe that violations of 18 U.S.C. § 2113(a) and (d) (Bank Robbery and Incidental Crimes) have been committed by the user of the **Subject Cellular Telephone 1 and Subject Cellular Telephone 2**.   There is probable cause to search **Subject Cellular Telephone 1 and Subject Cellular Telephone 2** described in Attachment A-1 and A-2 for evidence of these crimes, as described in Attachment B.

3.       I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been appointed as a Special Agent since April 2021.   I am assigned to the Violent Crime Task Force and have been since September 2021.   My duties include the investigation of crimes such as those at issue in this matter.

4.       The facts in this Affidavit come from your Affiant's own investigation, training and experience, the investigation of other agents and law enforcement officers, either directly or indirectly through their reports or affidavits, surveillance conducted by law enforcement officers, review of law enforcement databases, the acquisition and review of surveillance footage, and information obtained from witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all the relevant facts known to law enforcement officers.

1

## PROBABLE CAUSE/BACKGROUND ON INVESTIGATION

5.     On November 1, 2021, investigators from the FBI Violent Crimes Task Force began investigating a string of bank robberies which have occurred in the Phoenix, Arizona metropolitan area.  These robberies appeared to have been committed by the same suspect based on the suspect's physical description, modus operandi, and a similar vehicle being observed at multiple locations.  To date, the suspect is believed to have committed four bank robberies.  On March 23, 2022, Andres MURRIETTA was arrest shortly after bank robbery #4.  **Subject Cellular Telephone 1** was seized from MURRIETTA's person, and **Subject Cellular Telephone 2**, was seized from the car he was driving.

6.     The United States currency stolen during the below referenced robberies was federally insured by the Federal Deposit Insurance Corporation ("FDIC') or the National Credit Union Administration (NCUA).

### Summary of Bank Robberies to Date

### Robbery 1

7.     On November 1, 2021, at approximately 4:26 p.m., a male suspect entered the OneAZ Credit Union located at 2277 West Guadalupe Road, Gilbert, AZ 85233.  Upon entering, the suspect walked to a teller station and presented a handwritten note to the teller. The teller could not remember all the contents of the note, but it stated, "DON'T PUSH ANY ALARMS."  The suspect placed a white paper bag on the counter and pointed to it but did not speak to the teller.  The teller complied and gave the suspect approximately $2000.00 in United States currency.  The suspect placed the cash in the white paper bag and exited the bank, also taking the demand note with him.  The suspect was observed getting into the driver seat of a maroon or burgundy colored Nissan Altima with no license plate.  The vehicle exited the parking lot and was last observed heading east on Guadalupe Road.



8.      The suspect was described by the victim teller and surveillance videos as a Native or Hispanic male, approximately 35-45 years of age, approx. 5'7" to 5'8" in height, and weighing 155-175 lbs.  He was wearing a dark grey baseball hat with a black Hurley logo, dark blue t-shirt, white under shirt, blue jeans, black/white shoes, blue surgical mask, and aviator-style sunglasses.



**Robbery 2**

9.      On November 30, 2021, at approximately 10:40 a.m., a male suspect entered the First Bank, located at 2025 North Alma School Road, Chandler, AZ 85224.  Upon entering the bank, the suspect pressed a demand note onto the plexi-glass stating it was a robbery and to give him all the money and no one would get hurt.  The teller placed money inside the brown paper bag given to her by the suspect.  The suspect took the money and fled the area in a maroon-colored Nissan Altima.

3

10.    On December 9, 2021, FBI Violent Crimes Task Force received surveillance footage from a Chandler Police detective for First Bank showing the Subject Vehicle leaving the vicinity.



11.    The subject was described by the victim teller and surveillance videos as a Hispanic or Indian male, late 30's, 5'7" to 5'8" in height, weighing 180-190 lbs., heavy build, with brown hair, brown eyes, clean hands with clear tape on his fingertips, and he wobbled while walking.  He was wearing a blue facemask, and a baseball hat.  The vehicle was described as a Nissan sedan, maroon in color, similar in style and appearance to Nissan Altima year models 2015-2019.



4

**Robbery 3**

12.  On December 28, 2021, at approximately 11:04 a.m., a male suspect entered the Alaska USA Federal Credit Union located at 4330 E. Juanita Avenue, Mesa, AZ.  The subject entered the bank through the front door and approached Victim Teller #1 (hereafter, "VT1").  The subject showed VT1 a note that directed VT1 to place money in a brown paper bag, which was produced by the subject.  VT1 placed 5-$100 bait bills in the bag and returned it to the subject.  VT1 recalled the note stating, "This is a robbery, put the money in the bag."  VT1 noticed other words on the note but could not read them.  VT1 added that the brown bag was stapled together, requiring VT1 to pry it open.  VT1 also noticed a piece of tape that fell off the brown bag and attached itself to her teller window.

13.  The subject immediately walked to the next teller-station and showed Victim Teller #2 (hereafter, "VT2") the same note and handed her the same brown lunch bag.  VT2 recalled the note stating, "This is a robbery, put the money in the bag, try not to make a scene."  VT2 placed 5-$100 bait bills and 2-$2 bills in the bag and returned it to the subject.  The subject exited the bank through the front door and walked to a vehicle parked in the bank's parking lot.  VT1 ran to the window and observed the subject entering the driver seat of a Nissan Altima.  VT1 said the front window was not tinted and she did not notice a person in the passenger front seat.  VT1 took pictures of the vehicle as it drove away from

5

the parking lot.  The vehicle did not have a license plate and was missing the silver molding over the rear passenger door.



14.  The subject was described by the victim tellers and surveillance videos as a "tan" or "brown" male, in his 30s, 5'7" to 5'8" in height, and weighing 200 lbs.



15.   The FBI Violent Crimes Task force provided surveillance images to the Tempe Police department to assist with searching for the vehicle.  The Tempe Police Department obtained images from a static license plate reader after searching the make and model of the vehicle.  A Tempe Police Department patrol officer reviewed each capture, and found an image matching the vehicle description, with missing silver molding above

the rear passenger door. The image showed that vehicle was bearing Arizona license plate CNM1012 ("**Subject Vehicle**").

16.     The **Subject Vehicle** is registered to **MURRIETTA's** ex-wife at an address on Old Southern Avenue in Phoenix, Arizona. On December 29, 2021, your Affiant obtained Arizona Driver License information and current and historical driver license photos of **MURRIETTA**.  The most recent driver license photo of **MURRIETTA** was taken on July 19, 2019.  The driver license photo and the physical description of **MURRIETTA** appears to match the suspect in age, height, weight, and physical appearance.



17.     On December 30, 2021, the Court issued, under seal, a federal warrant authorizing the installation of a vehicle tracker on the **Subject Vehicle**, warrant No. 21-9327 MB.

18.     On January 4, 2022, checks of public information databases were conducted on **MURRIETTA** and revealed two telephone numbers associated with **MURRIETTA**.

19.     On January 11, 2022, the Court issued, under seal, a federal warrant authorizing the tracking of one of **MURRIETTA's** phones, cellular telephone number 480-577-2629, warrant 22-5010 MB, and a pen register/trap and trace Order was issued 22-5011MB. Subscriber and call detail records were obtained from T-mobile pursuant to

this warrant. Review of those records revealed an IMEI 862574038484300 was assigned to telephone number 480-577-2629

20.     During this investigation, law enforcement has conducted surveillance of MURRIETTA. **MURRIETTA** has been observed as regularly using and driving the **Subject Vehicle** as the sole occupant.

## Robbery 4

21.     On March 23, 2022, at approximately 10:17 a.m. a bank robbery occurred at the Sun West Credit Union at 1253 S. Gilbert Rd., Mesa, AZ. The suspect entered the bank and approached the teller counters. The victim teller asked the subject multiple times if she could help him, but he didn't look at her. The suspect turned sideways and then walked over toward the victim teller and mumbled, "I don't want anyone to get hurt." The subject passed a robbery demand not which said something to the effect of, "You're getting robbed right now, give me all your money, I don't want anyone getting hurt." The suspect took the note back and put it in his pocket. The victim teller complied and took money out of the drawer.  The suspect handed her a brown paper bag which was ripped and wrinkled, underneath the teller window. The victim teller then put approximately $3,551.00 in the brown paper bag. The subject put the bag in his pocket and fled the bank.

22.     The suspect was described by the witnesses and bank video as having dark eyes, dark eyebrows, black hair that came out of a black hat, a black coat with pockets, blue latex gloves, blue mask, and blue pants.



23.     Based on the subject's description and the actions taken by the robber during the robbery at the Sun West Credit union, investigators believed the suspect was **MURRIETTA**.

24.     Investigators reviewed the vehicle tracking data for the **Subject Vehicle**. The **Subject Vehicle** tracking data showed at approximately 10:14 a.m., three minutes prior to the robbery, the vehicle was in the area of the parking lot of the Sun West Credit Union at 1253 S. Gilbert Rd., Mesa, Arizona. Following the robbery, the tracking data showed the **Subject Vehicle** arriving at the parking lot at the Walmart at 24th Street and Baseline Rd. in Phoenix, AZ at approximately 10:45a.m. At this time, law enforcement established visual surveillance of the **Subject Vehicle**. Law enforcement observed **MURRIETTA** place items into a donation bin in that parking lot.  Law enforcement was able to observe in the donation bin what appears to be the hat and black jacket worn by **MURRIETTA** during the bank robbery.

25.     At approximately 11:12 a.m. **MURRIETTA** arrived in the **Subject Vehicle** at an oil change business located near 2816 South Country Club Dr., Mesa, AZ. At 11:45

a.m. **MURRIETTA** was taken into custody by the FBI Violent Crimes Task Force without incident. On MURRIETTA's person, law enforcement found $1,804.00.

26.      On MURRIETTA's person, a cellular telephone was found and is described as a Samsung Cellular Phone in Black Case, IMEI 35598084709034 (**Subject Cellular Telephone 1**)

27.      On March 23, 2022, a federal search warrant, issued in the District of Arizona, was executed on the Red Nissan Altima (**Subject Vehicle**), bearing AZ license plate CNM1012. In the vehicle, law enforcement found blue surgical gloves, a blue face mask, a ZTE cellular telephone, $741.00 in US Currency, and a brown paper bag. All items, excluding the ZTE cellular telephone, were seen during Robbery 4.

28.      This additional cellular telephone seized from the Nissan Altima is further described as: ZTE model Z798BL, IMEI: 862574038484300 Cellular Telephone, Black in color (**Subject Cellular Telephone 2**). It is noted that the IMEI of Subject cellular telephone 2 matches the IMEI listed in the records obtained from T-Mobile as referenced above.

29.      On March 23, 2022, a federal complaint was authorized by the U.S. Court for the District of Arizona (22-9076 MJ) charging MURRIETTA with four counts of violating 18 U.S.C. § 2113(a) (Bank Robbery).

### Digital Evidence Stored Within a Cellular Telephone or Computer

30.      As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of **Subject Cellular Telephone 1 and Subject Cellular Telephone 2**. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

31.      *Probable cause:* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be

10

stored in the **Subject Cellular Telephone 1 and Subject Cellular Telephone 2** for the following reasons:

 a. Based on my knowledge, training and experience, and in consultation with other experienced investigators, your Affiant is aware that individuals involved in criminal activity, to include bank robberies often maintain at their residences, vehicles, and on their property, tools and other implements they used during or in furtherance of the commission of the crime. Individuals involved in crimes such as bank robberies will also maintain notes or other documents containing the names and contacts of their associates. These individuals will also maintain notes or other documents related to the planning, preparation and execution of the crime or related to the victim. Sometimes subjects take pictures or videos of themselves, their fellow conspirators, clothing or instruments used in the commission of crimes, and post those pictures or videos on social media websites, store them in cloud-based accounts, which are connected to their cell phone or computer, or share them via cell phone applications and messaging services or video game platforms and messaging services. I also know that criminals, to include those being investigated for these matters, will use various means of communication, to include telephonic and/or other electronic means, to communicate with fellow conspirators and share information, including the use of messenger service applications on their cell phones and computers. These communications may take place at various stages of the commission of the crime, i.e, the planning of, execution of, or after the crime.

 b. Based on my knowledge, training and experience, and in consultation with other experienced investigators, your Affiant knows that a cell telephone, cellular phone, or mobile telephone is a handheld wireless device used for voice communication through radio signals. These telephones send signals through networks of transmitters/receivers called "cells," enabling communication with other cellular telephones and traditional "land line"

11

telephones.  A cell phone usually includes a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, cell phones now offer a broad range of capabilities.  These capabilities include: storing names, phone numbers, addresses and other contact information in electronic "address books" or "contact lists;" sending, receiving, and storing text messages, multimedia messages, email, and other message types; taking, sending, receiving and storing still photographs and moving video; storing and playing back audio files; storing dates, notes, appointments, and other information on personal calendars; accessing social media sites and applications; and accessing and downloading information from the Internet. With the capability to access the Internet, data files, logs and other information are often stored or maintained on the cell phone.  Cell phones may also include global positioning system (GPS) technology for determining location of the device.  Additionally, most cell phones offer the ability to run applications or computer software developed for use on mobile devices.  These applications give cell phones many of the same capabilities as personal computers.  It is common for cell phone applications to utilize or keep the GPS or location history information.  Cell phones and mobile devices can be used to store data and files, either on internal storage media or on removable media such as a memory card.

c.  Based on your Affiant's training and experience, individuals rely heavily on their cellular telephones and their communications in their day-to-day activities and actions.  These communications are often in the form of telephone calls, voice messages, SMS text messages, mobile messaging service applications, photo sharing, social media, and other similar communications. Records and copies of such communications are often kept on the cell phone or mobile device.  Individuals also rely heavily on their cell

12

phones and mobile devices to maintain their "address books" and "contact lists" and for notetaking, calendaring, and navigation.

d.  Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

e.  Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

f.  Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone or computer, deleted, or viewed via the Internet. Electronic files downloaded to a cellular

13

telephone or computer can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is because when a person "deletes" a file on a cellular telephone or computer, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone or computer until it is overwritten by new data.

g. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone or computer that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's or computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

32.    *Forensic evidence:* As further described in this Affidavit, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone or computer was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the **Subject Cellular Telephone 1 and Subject Cellular Telephone 2**:

a. Data in a cellular telephone or computer can provide evidence of a file that was once in the contents of the cellular telephone or computer but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. As explained herein, information stored within a cellular telephone or computer may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the government to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry

14

information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone or computer. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone or computer was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone or computer can indicate how and when the cellular telephone or computer was accessed or used. For example, as described herein, cellular telephones and computers can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone or computer, and the IP addresses through which the cellular telephone or computer accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone or computer access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone or computer may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone or computer. Last, information stored within a cellular telephone or computer may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating

15

criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a cellular telephone or computer works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone or computer was used, the purpose of its use, who used it, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone or computer that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone and computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone or computer is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a cellular telephone or computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

33.   *Nature of Examination:* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise

copying the contents of the Subject Cellular Telephone 1 and Subject Cellular Telephone 2 including the use of computer-assisted scans.

## **AUTHORIZATION REQUEST**

34.     Based on the foregoing, your Affiant submits there is probable cause and reason to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 18 U.S.C. § 2113(a) and (d) (Bank Robbery and Incidental Crimes), are likely to be found in the contents of **Subject Cellular Telephone 1 and Subject Cellular Telephone 2.**

35.     Based on the foregoing, your Affiant requests that the Court issue the proposed search warrant.

36.     I declare under penalty of perjury under the laws of the Unites States of America that the forgoing is true and correct.

Respectfully submitted,

Jacey Curry
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me telephonically on April 13, 2022. @ 2:24pm

HONORABLE DEBORAH M. FINE
UNITED STATES MAGISTRATE JUDGE

17